[Civ. No. 46375. First Dist., Div. Four. Jan. 9, 1980.]

In re the Marriage of RUBY EVELYN and
REED EMERSON NIELSEN.
REED EMERSON NIELSEN, Appellant, v.
RUBY EVELYN NIELSEN, Respondent.

**COUNSEL**

Bruce B. Bruchler, Crump, Bruchler & Crump, William R. Edgar and Fitzgerald & Edgar for Appellant.

Christopher K. King and Winters & Winters for Respondent.

OPINION

**CHRISTIAN, J.**—Reed Emerson Nielsen appeals from an order modifying the support provisions of a judgment of marital dissolution.

Appellant and Ruby Evelyn Nielsen separated in 1972 after 31 years of marriage. The parties signed a property settlement agreement prepared by counsel for wife. The agreement contained a spousal support provision. The agreement was incorporated in the judgment of marital dissolution. On October 20, 1978, wife secured an order to show cause concerning a modification. After a hearing, the court ordered a modification of the interlocutory and final judgments by increasing the monthly support payments to be paid by husband to wife. The present appeal followed.

■ Husband contends that the court lacked jurisdiction to modify the provision for support because the property settlement agreement was not merged into the interlocutory decree. Prior to the enactment of Civil Code section 4811,[1] the question of whether the parties and the trial court intended to merge a property settlement agreement into an interlocutory decree was relevant to determine whether spousal support payments were law-imposed and subject to modification by the court. Section 4811 makes the concept of merger irrelevant to determine

---

[1]Civil Code section 4811: "(a) The provisions of any agreement between the parties for child support shall be deemed to be separate and severable from all other provisions of such agreement relating to property and support of the wife or husband. All orders for child support shall be law-imposed and shall be made under the power of the court to make such orders. All such orders for child support, even when there has been an agreement between the parties on the subject of child support may be modified or revoked at any time at the discretion of the court, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke.

"(b) The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or, if there is no written agreement any oral agreement entered into in open court between the parties, specifically provides to the contrary.

"(c) This section shall be effective only with respect to property settlement agreements entered into on or after January 1, 1970, and shall not be deemed to affect agreements entered into prior thereto, as to which the provisions of Chapter 1308 of the Statutes of 1967 shall apply."

whether a court may modify a marriage settlement agreement executed on or after January 1, 1970. (6 Witkin, Summary of Cal. Law (8th ed. 1974) p. 5061.) The settlement agreement in the present case was executed after January 1, 1970. The support agreement therefore is law-imposed and subject to modification by court order, unless the written agreement or an oral agreement entered in open court specifically provides to the contrary. (Civ. Code, § 4811, subd. (b).) The trial court did not lack jurisdiction.

■ Husband next contends that the trial court erred when it found that the marriage settlement agreement was subject to modification. The marital settlement agreement contained a conventional provision for reciprocal release of rights.[2]

A question in this appeal is whether the release language "specifically provides" that the court may not modify the support provisions of the agreement as incorporated in the judgment of marital dissolution. Only such a specific provision avoids the general rule of Civil Code section 4811 that "The provisions of any agreement for the support of either party shall be deemed to be separate and severable...law-imposed [obligations] deemed made under the power of the court to make such orders [and thus] subject to subsequent modification or revocation by court order...."

The evident purposes of Civil Code section 4811 were to dispose of the abstruse and unprofitable jurisprudence which had grown up around the concepts of integration and severability (see, e.g., *DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387 [33 Cal.Rptr. 610, 385 P.2d 2]; *Plumer* v. *Plumer* (1957) 48 Cal.2d 820 [313 P.2d 549]; *Dexter* v. *Dexter* (1954) 42 Cal.2d 36 [265 P.2d 873]) and establish a legislatively declared social policy that contractual provisions for the support of a spouse be subject to modification by the court in the light of changed circumstances unless the parties explicitly agree to preclude such modification. The utility of this policy is obvious. Even in the absence of inflationary distortions, the parties to a marital settlement agreement can hardly anticipate and provide for unexpected changes of circum-

[2]"RELEASE OF RIGHTS: 1. Except as otherwise provided in this Agreement, each party to this Agreement does hereby release the other from any and all liabilities, debts, or obligations, of every kind and character, heretofore or hereafter incurred, and from any and all claims and demands, including all claims of either party upon the other for support and maintenance as Wife or as Husband, it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects."

stance which may invalidate the expectations reflected in the agreement. Despite the public interest in reserving for judicial redetermination on the basis of changed circumstances contractual provisions for support, the Legislature left it open to marital partners to preclude judicial modification by inserting in the agreement a specific provision to that effect.

Here, the 1972 agreement established spousal support in the amount of $214 per month, "continuing for remainder of wife's life." That allowance was supplemented by provisions that husband would make payments on the house occupied by wife and would provide health insurance. The paragraph of the agreement dealing with spousal support is silent on the question of modification. The general release of rights (fn. 2, *ante*) refers, among other items, to "all claims of either party upon the other for support and maintenance...it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects." So far as the contractual relations of the parties are concerned, the general release of rights would be held to express an intention that the obligation of support would be governed by the agreement. (Cf. *Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 41.) But the release of rights provision is entirely silent with respect to the power of modification vested in the court by Civil Code section 4811. Therefore, the trial court acted correctly when it determined that there was no specific provision in the release language precluding modification by judicial action. Just as parol evidence may not be received to supply a missing provision against modification (*In re Marriage of Wright* (1976) 54 Cal.App.3d 1115 [126 Cal.Rptr. 894]), the statute cannot be avoided by drawing inferences as to the intention of the parties from a general "release of rights" paragraph which contains no "specific" provision concerning judicial modification.

Although neither the paragraph establishing spousal support nor the general release-of-rights paragraph excludes judicial modification, a contrary result is required by the final paragraph of the agreement: "EFFECTIVE DATE: This Agreement is executed on and shall be effective from and after the 9th day of February 1972. This Agreement may, if desired, be submitted to the Court for its approval, but this Agreement shall not depend for its effectiveness on such approval, nor be affected thereby." The provision that the agreement "shall not depend for its effectiveness on [court] approval, nor be affected thereby" is a specific provision precluding judicial modification. As the court declared in

*Forgy* v. *Forgy* (1976) 63 Cal.App.3d 767 [134 Cal.Rptr. 75], constru-
ing a similar provision, any other interpretation would permit the court
to give a merely formal approval to the agreement but later affect it by
changing the support obligation. (Also see *In re Marriage of Kilkenny*
(1979) 96 Cal.App.3d 617 [158 Cal.Rptr. 158].)

The order is reversed with directions to discharge the order to show
cause.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I concur in the judgment only.

Civil Code section 4811, subdivision (b) provides that any agreement
for spousal support "shall be subject to subsequent modification or revo-
cation by court order...except to the extent that any written
agreement...specifically provides to the contrary." Contrary to the ma-
jority's opinion, it does not provide that in order to make spousal
support agreements nonmodifiable the parties must use certain magic
words nor does it indicate that the language must refer to a court's
power to modify.

The degree of specificity envisioned by the Legislature could not have
been made clearer than in *Forgy* v. *Forgy* (1976) 63 Cal.App.3d 767
[134 Cal.Rptr. 75]. Faced with statutory language which was identical
to that quoted above and was contained in Civil Code section 139, the
predecessor of section 4811, the court stated: "To comply with the non-
modifiable provisions of section 139 it is not necessary the parties to a
separation agreement state categorically: 'The provisions of this agree-
ment for support are not subject to modification or revocation by court
order.' To the contrary, 'no particular magic words are needed' to pro-
vide the exception to modifiability contemplated by the statute.
[Citations.]" (*Id.*, at p. 771.) So, the question is whether the agreement
specifically provides that it is not subject to later modification. The ma-
jority believes that the release clause alone does so provide. I agree.

But the majority reads more in Civil Code section 4811, subdivision
(b) than I can find or the court in *Forgy* finds. Here what the parties
said in at least three places in their agreement was that their agreement
re spousal support was not modifiable, period. That is enough for me to
believe that they meant what they said and my reading of Civil Code

section 4811, subdivision (b) is identical to the *Forgy* interpretation, i.e., that is all the Legislature required them to say in order to guarantee that a court at a later time could not modify the agreement.

The majority opinion says it wants more: it wants specific exclusion of *judicial* modification in the agreement. Not only do I not find that in the statute I do not find it in the agreement. The provisions that the agreement "shall not depend for its effectiveness on [court] approval, nor be affected thereby" is not in any plain understanding of the English language a "specific" provision against subsequent court modification. Nor do the cases cited in the majority opinion say that such language is specific. Again, the *Forgy* decision reads Civil Code section 4811 exactly the way I do. That decision did not deal with a clause similar to the one focused on here: it provided "'. . . such decree shall in no way affect this agreement or any of the terms, covenants, or conditions thereof, it being understood that this Agreement is *absolute, unconditional and irrevocable.*" *(Id.,* at p. 770, italics added.)

But even assuming for purposes of argument that the clauses are similar, *Forgy* does not find that clause to be a *specific* provision precluding court modification but rather finds the preclusion to be *implied*: "The word 'decree' used therein *impliedly* includes the orders embodied in the decree and any modification of those orders. Any other *interpretation* would permit the court to comply with the agreement in its 'decree' but forthwith effect noncompliance therewith by a subsequent decree or order. As thus *interpreted* the agreement provides, a court decree incorporating its provisions and any modification thereof shall in no way affect the spousal support provisions thereof as to which the agreement 'is absolute, unconditional and irrevocable.'" *(Id.,* at pp. 770-771, italics added.)

If, as the majority claims, that is a holding by the *Forgy* court that the clause is a specific provision precluding judicial modification then why is the language just quoted immediately followed by "it is not necessary the parties to a separation agreement state categorically 'The provisions of this agreement for support are not subject to modification or revocation by court order.'"?

In summary I conclude that the majority opinion asks the wrong question (i.e., did the agreement specifically exclude *judicial* modification?). But if the majority is asking the right question I believe it has

answered it incorrectly. On the other hand the majority opinion seems to say that I am asking the wrong question (i.e., did the agreement specifically exclude modification?), but concedes that if I am asking the correct question that I have at least answered it correctly.

Respondent's petition for a hearing by the Supreme Court was denied March 6, 1980.