[No. D009127. Fourth Dist., Div. One. July 25, 1990.]

In re the Marriage of PAMELA D. and MEREDITH R. JONES.
MEREDITH R. JONES, Appellant, v.
PAMELA D. JONES, Respondent.

COUNSEL

Sharron Voorhees for Appellant.

Shea & Ashworth, Frances L. Harrison and Gregory D. Larson for Respondent.

OPINION

**FROEHLICH, J.**—Meredith R. Jones (Husband) appeals from an order increasing spousal support and extending the term for payment of spousal support from a specific termination date until the death of either party, remarriage of Pamela D. Jones (Wife), or further order of the court.

Husband contends the trial court lacked jurisdiction to make the order because the marital settlement agreement entered into by the parties at the time of their marital dissolution specified the payment of support for a limited period and in specific amounts. The court concluded that the settlement agreement "fails to contain any statement restricting modification of spousal support." The court therefore ruled, relying on the authority of *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248], that it had jurisdiction to increase and extend support payments.

We conclude the court had jurisdiction to modify the current support amounts by virtue of Civil Code[1] section 4811, subdivision (b) and that it retained jurisdiction to extend the support term as the result of the 1987 amendment to section 4801, subdivision (d). Finding the court's order within its proper exercise of discretion, we affirm.

FACTUAL BACKGROUND

The interlocutory decree of dissolution herein was entered on January 7, 1981. The decree attached, approved and incorporated the parties' marital settlement agreement. With reference to child support, the agreement provided: "Subject to the power of the court to modify the same, the Husband agrees to pay $250 per month per child, a total of $500 per month, payable on the 1st day of each month and continuing for each child until said child dies, marries, becomes self-supporting, or reaches the age of 18, whichever occurs first."

The provision for payment of spousal support was as follows: "The Husband agrees to pay the Wife for her support the sum of $1,000 per month for one year beginning on the 1st day of the month following the wife and children's occupancy of a house to be purchased in Phoenix, Arizona, followed by payments of $750 per month continuing through May 1983, followed by payments of $500 per month continuing until January 1, 1986, followed by payments of $250 per month continuing until October 1, 1989. The Husband agrees to pay $400 per month until commencement of the first $1,000 payment. In addition, the Husband agrees to pay one lump sum payment of $1,000 in December 1987. All payments will terminate on the death of either party, the remarriage of the recipient, or on October 1, 1989."

The only other reference in the agreement to support was Wife's waiver of any claim to Husband's Navy contingent retirement benefits or pension

---

[1] All statutory references are to the Civil Code unless otherwise specified.

(an expectancy since he was at the time on active duty), indicating such waiver was "[i]n consideration of support payments and other agreements contained herein."

Wife petitioned for an increase and extension of support in February 1988, over a year before the termination date specified in the agreement, and at a time when she was receiving under the terms of the agreement $250 per month. The court increased monthly support to $1,000 and extended its term, as indicated above, indefinitely.

## DISCUSSION

Section 4811, subdivision (b) preserves court jurisdiction to modify a support order unless the contrary is provided by a written agreement. Section 4801, subdivision (d) relates to the court's jurisdiction to extend support past the termination date provided in an original order. The two statutory provisions at times appear overlapping, since a "modification" can change not only current payments but the duration of support.[2] We are confronted here with both a modification of current support amount *and* an extension of support term, where neither change appears contemplated by the marital agreement incorporated into the decree. Since we conclude the legal effect of section 4801, subdivision (d) to have been modified by the 1987 amendment to that section, we separate in our discussion the question of current modification and extension of term.

### 1. *Modification of Current Support*

Section 4811, subdivision (b) provides: "The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order . . . except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary."

The agreement in this case, incorporated into the court decree, provided for specific payments for identified time periods, and also provided that the payments would terminate on death, remarriage or a specific date. Thus, the agreement contained no articulated reference to either a power of court modification or preclusion of court modification. ■ One might argue that reference in the child support section of the agreement to "the power of the court to modify," coupled with lack of such reference in the spousal support portion of the agreement, suggests an intention to deprive power of

---

[2] See, e.g., *In re Marriage of Vomacka, supra,* 36 Cal.3d at pages 472-474, where it was held that jurisdiction to modify or award spousal support implied jurisdiction to extend it.

modification of the spousal support provision. In light of the statutory requirement that the agreement "specifically provide" any preclusion of jurisdiction to modify, we reject the suggestion that such provision can be found by this somewhat tenuous inference.

■ The plain question, then, is: Can a stated and periodically reducing amount of support be said to be a specific provision against court modification? We believe it cannot.

The requirement that the agreement contain a specific provision precluding modification does not impose the necessity of using formula or "magic" words. (*In re Marriage of Wright* (1976) 54 Cal.App.3d 1115, 1120 [126 Cal.Rptr. 894].) In *Forgy* v. *Forgy* (1976) 63 Cal.App.3d 767, 770 [134 Cal.Rptr. 75], for instance, the predivorce separation agreement stated that it should be incorporated in any subsequent divorce, but that "such decree shall in no way affect this Agreement or any of the terms, covenants, or conditions thereof, it being understood that this Agreement is absolute, unconditional and irrevocable." The court had no difficulty in concluding that this was a sufficiently "specific" preclusion of subsequent court modification. (See also *In re Marriage of Kilkenny* (1979) 96 Cal.App.3d 617 [158 Cal.Rptr. 158].) Similarly, the court in *In re Marriage of Nielsen* (1980) 100 Cal.App.3d 874, 878 [161 Cal.Rptr. 272] determined an agreement which provided that it should " 'not depend for its effectiveness on (court) approval, nor be affected thereby,' " was a specific preclusion of judicial modification.

The *Nielsen* court also, however, reviewed a more general clause of its agreement: that which contained a general release of all claims for support other than as contained in the agreement. This general language was, the court held, "silent with respect to the power of modification vested in the court by Civil Code section 4811," and therefore ineffective to preclude it. (100 Cal.App.3d at p. 878.)

A similar determination respecting general language in an agreement is found in *Fukuzaki* v. *Superior Court* (1981) 120 Cal.App.3d 454 [174 Cal.Rptr. 536]. The wording there included boilerplate provisions to the effect that the agreement was complete and entire, could not be changed without mutual consent in writing, and constituted a complete release of rights other than as contained in the agreement. The court held this general wording did not conform to the requirement of section 4811, in that it contained no "specific" provision; the agreement was simply "silent on the question of modification." (*Id.* at p. 458.)

The agreement in *In re Marriage of Forcum* (1983) 145 Cal.App.3d 599, 601 [193 Cal.Rptr. 596] contained no reference to potential modification by

future court action. The court found general language suggesting an intention to achieve finality to be outweighed by a step-down in support to $1 per year for the last five years of the term. The holding does not directly control our case because it construes the $1-per-year provision as evidence of an intent to *retain* jurisdiction to modify, thus undermining any inference of an intent to prevent future modification by the boilerplate language of release and finality otherwise contained in the agreement.

The Jones marital agreement—the one before us in this case—did not contain boilerplate language. We are thus not confronted with the difficulty of analyzing whether releases for all time and waivers of future rights suggest an intention to prevent future court jurisdiction to modify. We have no suggestion of contemplation of modification by virtue of the support terms themselves, as was the case in *Forcum* with its $1-per-year provision. The Jones agreement contained only specific payments for specific periods of time, declining on a predetermined scale. It can be argued that the predetermination of this schedule of payments and its regression to zero at the end of the stated period of support indeed suggest a contemplation of finality and nonmodifiability.

We are satisfied, however, that section 4811 should be construed in accordance with its literal wording. Section 4811 and its predecessor, section 139, were adopted to "dispose of the abstruse and unprofitable jurisprudence which had grown up around the concepts of integration and severability"— the previous keys to modifiability of marital agreements. (See discussion in *In re Marriage of Nielsen, supra,* 100 Cal.App.3d at p. 877 and conc. opn. at p. 879.) In an effort to improve what had become a very unclear area of law and practice, the Legislature established the principle of continuing jurisdiction to modify spousal support decrees, preserving the parties' power to exclude such jurisdiction only if they were to "specifically provide[] to the contrary" in their marital agreement. (§ 4811, subdivision (b).) One can speculate as to the intentions of the Joneses with their adoption of a precisely declining schedule of support. It is possible, or perhaps even likely, that at least Husband assumed his agreement was final and nonmodifiable. He did not, however, comply with the then-effective requirement for achieving this result: that his intention be *specifically* set forth. We conclude the trial court was justified in finding jurisdiction to change the amount of current support.

## 2. *Extension of Support Term*

From the date of its adoption in 1969 until 1987, section 4801, subdivision (d) read as follows: "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period spe-

cified in the order and shall not be extended unless the court in its original order retains jurisdiction."

A line of cases best illustrated by *In re Marriage of Vomacka, supra*, 36 Cal.3d 459 read the provisions of section 4811 together with 4801 and reached the conclusion that, to be effective, language in a marital agreement intended to preclude jurisdiction to extend support had to be stated rather explicitly. Implications drawn from the agreement suggesting possible intention to reserve jurisdiction would be favored. In *Vomacka*, for instance, the agreement language was that " '[t]he [c]ourt shall retain jurisdiction regarding spousal support until [a specific date] at which time [wife's] right to request spousal support . . . shall terminate forever.' " (36 Cal.3d at p. 461.) Referring to an earlier Court of Appeal decision, *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755 [191 Cal.Rptr. 267], the Supreme Court noted that a reservation of jurisdiction to "award" support connotes not only modification of the amount but also the period of support. It concluded that the provision in the *Vomacka* agreement, retaining "jurisdiction regarding spousal support," had essentially the same meaning as the *Maxfield* reservation of jurisdiction to "award" support. (*In re Marriage of Vomacka, supra*, 36 Cal.3d at pp. 472-473.) Following its inclination to construe ambiguous terminology in favor of retaining jurisdiction to extend the period of support, the *Vomacka* court concluded this agreement did not satisfy the section 4811, subdivision (b) requirement of a written agreement which provided the "contrary" of assumed retained jurisdiction.

A similar case was *In re Marriage of Benson* (1985) 171 Cal.App.3d 907 [217 Cal.Rptr. 589]. Here the agreement language was that support would continue "until the death of either party, [wife's] remarriage, *until modified by a court of competent jurisdiction* or until the expiration of eight (8) years, whichever first occurs." (*Id.* at p. 910, italics in original.) Following the reasoning of *Vomacka*, the court held that the reservation of jurisdiction to modify during a specified period of years implied the jurisdiction to extend throughout the duration of the support. (*Id.* at p. 913.)

■ Our case, however, does not contain the elements of *Vomacka, Benson* or similar cases, which permit the implication of an intention to retain jurisdiction. The agreement provisions were simply for a specified monthly support amount for a period of years, and a flat statement of termination on a date certain. No reference is made to any intention to retain jurisdiction during this period for the purpose of making modifications. The closest authority to our situation is *In re Marriage of Foreman* (1986) 183 Cal.App.3d 129 [228 Cal.Rptr. 4]. The provision in the *Foreman* marital agreement was as follows: " ' . . . the sum of $1,300 per month, with the first of said payments to be made on or before May 5, 1974, and thereafter

said payments to be made on or before the 5th day of each succeeding calendar month until Petitioner remarries, either party dies, or a total of ten years, whichever first occurs. Thereafter, said spousal support payments shall automatically reduce to a jurisdictional amount of $1.00 per year for an additional one year, and then terminate. The said spousal support payments provided hereunder shall not be modifiable under any circumstances until June 30, 1977. Thereafter, said support payments may be modified by the court on a proper showing by either party.' " (*Id.* at p. 131.)

The *Foreman* court emphasized the special determination of both *Vomacka* and *Benson*—that the language of the marital settlement agreement in each case permitted the inference of an intention to retain jurisdiction to modify. Reservation of jurisdiction to make an *award* of support, or to act upon a *request* for such an award, "would be meaningless if the court was without jurisdiction to award support" past the otherwise specified expiration date. (*In re Marriage of Foreman, supra,* 183 Cal.App.3d at p. 132.)

In *Foreman,* however, as in our case, no language was included which could reasonably be interpreted as reserving jurisdiction. The court noted that section 4801, subdivision (d) is an express legislative limitation upon the court's power to modify prior orders. This section requires that a reservation of jurisdiction "be stated by specific language in the decree of dissolution . . . . Otherwise, there would be no purpose for that section, because it always would be ineffective to prevent extensions in light of the court's inherent power to modify pursuant to section 4811. In order to make the statutory scheme rational, section 4811 must be deemed to refer only to the power to modify the terms of the support order for the time period designated in the original order of support, and the ability to extend that period of time deemed legislatively limited by section 4801, subdivision (d) to those situations where there has been an express reservation of jurisdiction in the original decree." (*In re Marriage of Foreman, supra,* 183 Cal.App.3d at p. 134.) The *Foreman* court also noted the reservation of power to modify referred to "payments" rather than support in general, concluding therefrom that only modification of current payments was intended, not an extension of the support term. (*Ibid.*)

We would feel bound by the *Foreman* authority were section 4801, subdivision (d) today in the same form that confronted the *Foreman* court. There has, however, been a change. In 1987 the Legislature added the following words to the statute: "Except upon written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely where the marriage has been of long duration." On its face, this amendment would seem to incorporate the requirement of section 4811, subdivision (b) into 4801, subdivision (d). Under 4811, subdivision (b) jurisdiction to modify is retained unless the parties "specifically

provide[] to the contrary." Under section 4801, subdivision (d) where a "marriage of long duration" is involved (as the Jones marriage admittedly was), jurisdiction to extend the support term is maintained unless there is a written agreement "to the contrary."

Can it now be disputed that the Legislature intended to adopt, for purposes of deprivation of jurisdiction to extend, in the case of marriages of long duration, the same requirements that had long been in force for deprivation of jurisdiction to modify? The *Foreman* court found it necessary to declare different criteria for extension jurisdiction than for modification jurisdiction; otherwise there would be no purpose to section 4801, subdivision (d). It appears to us that the Legislature has reacted by imprinting upon section 4801, subdivision (d) the very same strictures previously contained in section 4811, subdivision (b). It is our conclusion, therefore, that the authority of *Foreman* has been substantially undermined by the 1987 legislation.[3] A court retains jurisdiction to extend the support term when the marriage has been of long duration unless the agreement specifically provides to the contrary. As noted in the first portion of this opinion, where the terms of the marital settlement agreement were quoted at length, there was no provision precluding court extension of the support payments; indeed, there was no specific reference to any preclusion of retained jurisdiction to modify. The trial court was therefore correct in concluding it retained jurisdiction to extend the support term.

### 3. *Changed Circumstances and Entitlement to Attorney Fees*

■ Appellant contends that even if the court had jurisdiction to modify and extend the support order, it committed error in making its order because (1) no change in circumstances was shown and (2) attorney fees should not have been awarded Wife. We find no merit in these contentions.

---

[3] The requirement that courts retain jurisdiction indefinitely absent written agreement to the contrary or a court order terminating support was sponsored by the Senate Task Force on Family Equity. ((1987) 11 Cal.Fam.L.Rep., No. 11, com., p. 3464.) According to the task force's final report, since the inception of "no-fault" divorce in California, courts have tended to order short-term rather than long-term spousal support awards. The report notes research reveals that in 1968, 62 percent of spousal support awards were "permanent" or of indefinite duration, but by 1977 only 32 percent were open ended. The report states this shift has had a devastating effect on women from marriages of long duration, but courts continue to fail to recognize the permanent support responsibilities created by such marriages. In the report the task force therefore recommends legislation which would expressly require courts to retain permanent jurisdiction over spousal support where long marriages are involved, and states this requirement would codify case law. (Final Rep. of the Sen. Task Force on Family Equity (June 1987) pp. V-9-V-10.) We note that such a requirement does not correspond, however, with the law of *Foreman*. It would appear the *Foreman* rule would continue to be viable only for marriages not considered to be of long duration. (Under section 4801, subdivision (d) for purposes of retaining jurisdiction, a marriage of 10 years or more is presumed to be a marriage of long duration.)

Husband properly points out that in order to modify a support order the court must find that a change of circumstances has occurred since the prior order. (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) Husband also correctly asserts that the court made no express finding of change of circumstances. It does not follow in this case, however, that there are insufficient grounds for the order modifying support. ■ A court is obligated, upon proper request, to make findings in the form of a statement of decision when rendering an order modifying permanent support. (§ 4801, subdivision (a); Code Civ. Proc., § 632; 1 Hogoboom & King, Cal. Practice Guide (TRG 1988) Family Law, § 6:144, p. 6-123.) Where a statement of decision is requested it is the obligation of the court to explain the factual and legal basis for its decision as to each of the principal issues at trial. (Code Civ. Proc., § 632.) When a statement of decision is not requested it is deemed waived. (*University of San Francisco Faculty Assn.* v. *University of San Francisco* (1983) 142 Cal.App.3d 942, 946 [191 Cal.Rptr. 346].)

Upon waiver of the statement of decision, it is required of the court only that it issue its written order or judgment. (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 398, pp. 404-405.) In reviewing a judgment without a statement of decision the appellate court indulges every intendment in favor of the judgment, and assumes the trial court found every essential fact to support the judgment. The task of the appellate court is limited to searching the record for any substantial evidence which will support the judgment. (*Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 173-174 [159 Cal.Rptr. 864].)

Neither of the parties in this case requested a statement of decision. While the trial court made certain findings in its tentative decision, stated from the bench, and the form of order prepared by prevailing counsel incorporated these statements as a preface to the order, they cannot in any sense be deemed complete findings of fact. One of the purposes of Code of Civil Procedure section 632 is to gain input by counsel into the preparation of the statement of decision and to cause the preparation of a statement of findings which covers all issues. Where no statement has been requested or prepared it would be unfair to the trial court to criticize the fragmentary factual statements included in an oral tentative decision as an incomplete statement.

We therefore treat the order in this case as *only* an order, and consider the factual statements included in its preface as only partial and incomplete statements of the basis for the order.[4] We therefore decline to find error in

---

[4] The court, both in its oral statement of decision from the bench and in the preface to its written order, referenced the fact that Wife had entered into the agreement without benefit of legal advice and that her original agreement of limited support was in some way related to

the judge's failure to make a finding of change of circumstances, and search the record to determine whether there are facts supporting a presumed finding of change of circumstances.

■ We find those facts. Husband's financial situation had improved since the original decree; Wife had not been able to achieve self-supporting status as was contemplated at the time of the original marital settlement agreement and decree; Wife was obligated to continue assisting the 18-year-old son of the parties. While the increase in monthly support from $250 to $1,000 might be deemed in some circumstances rather substantial, we conclude it was within the trial court's broad discretion in this case. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89 [154 Cal.Rptr. 413, 592 P.2d 1165].)

We are of the same view with respect to the attorney fee award. The award of $750, payable at the rate of $50 per month, was termed by the judge as a "contribution" toward Wife's attorney fees; we infer thereby a finding by the court, which we consider justified, that Wife's total fees were in excess of $750. Under the circumstance of Husband's clearly superior ability to pay fees, we are unable to find the order inappropriate. ■ The court has broad discretion to determine fees (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918]), and may rely on the pleadings and other papers in the file as a basis therefor (*White* v. *Marciano* (1987) 190 Cal.App.3d 1026, 1034 [235 Cal.Rptr. 779]).

## DISPOSITION

The order is affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied August 15, 1990, and appellant's petition for review by the Supreme Court was denied October 10, 1990.

---

her waiver of Husband's retirement benefits. No motion to set aside the marital agreement or the original order based thereon ever having been made, the reference to lack of representation in the preparation of the agreement appears irrelevant. Also, the judge's apparent conclusion that Wife's waiver of an interest in Husband's retirement benefits was inequitable would seem not to bear on the issues then before the court. However, in that we have found adequate grounds to support the order made by the court, any error in the consideration of these other matters would appear harmless.