Filed 3/3/15  Marriage of Pinon CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of PHILLIP and GLORIA PINON. | |
| PHILLIP LOUIS PINON, Appellant, v. GLORIA J. PINON, Respondent. | E060386 (Super.Ct.No. FAM157362) OPINION |

APPEAL from the Superior Court of Riverside County.  H. Ronald Domnitz, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Edmund L. Montgomery for Appellant.

Chandler Law Firm and Robert C. Chandler for Respondent.

1

I

INTRODUCTION

Phillip Louis Pinon,[1] petitioner and appellant, appeals from an order after

judgment.  (Code Civ. Proc., § 904.1, subd. (a)(2).)  The court ordered Phillip to pay

$2,000 a month in spousal support to his former wife, Gloria.

Phillip frames the issues on appeal as follows:  whether the parties mutually

agreed in writing, as provided by Family Code section 4337,[2] to waive the court's

jurisdiction to award spousal support upon the remarriage of either party, or, in the

alternative, whether the court failed to conduct a hearing or to make the findings on the

record required for an order of spousal support under section 4320.

We hold the court retained jurisdiction to award spousal support in a long

marriage (§ 4336), and the trial court adequately addressed the relevant circumstances at

the hearing (§ 4320).  We affirm.

II

FACTUAL AND PROCEDURAL HISTORY

The parties represented themselves throughout most of the proceedings until

December 2013.

---

[1] We use the parties' first names for ease of reference.

[2] All further statutory references are to the Family Code.

2

## A. *The Dissolution Proceedings from 1995 to 1998*

In 1995, Phillip filed a petition for dissolution of a marriage of 26 years, from March 1969 to February 1995. In his petition for dissolution, Phillip asked the court to terminate its jurisdiction to grant spousal support. He did not ask for spousal support. In her response, Gloria asked for spousal support.

On March 19, 1996, the parties appeared in propria persona at a trial status conference. The minute order states: "Parties will collaborate on the preparation of a final order and judgment in accordance with the stipulation. [¶] . . . [¶] Final Disclosures are knowingly and intelligently WAIVED."

The stipulation and corresponding judgment were prepared by Phillip and were executed by the parties acting in propria persona. No spousal support was awarded at that time. However, the stipulation and judgment provided, "The court reserves jurisdiction over spousal support for the benefit of both parties until the remarriage or death of either party." It was further stipulated Gloria was "entitled to one-half (1/2) interest in Petitioner's Retirement Benefits with the County of Orange." Judgment was entered on October 2, 1996. Phillip remarried in April 1997.

In 1997, the parties executed a stipulated domestic relations order, prepared by Gloria, dividing their interest in Phillip's retirement benefits. In 1998, the parties executed an agreement, prepared by Gloria, in which Gloria agreed to waive her interest in the retirement benefits for payment of $14,400.

*B. The Modification of Child Support in 2013*

On September 23, 2013, Gloria filed a request to modify spousal support. In support of her request, Gloria explained the parties had earned equal incomes of about $3,500 monthly in 1996 but a change in circumstances had occurred because she was no longer able to work. Gloria was 65 years old, diabetic, and the caretaker for her parents, ages 87 and 90. Gloria was living on social security payments of $1,350 per month and her elderly parents' monthly income was $1,200. Gloria's expenses were $1,536 monthly.

Phillip responded that, after he had retired seven years earlier, he received a monthly income of more than $9,000, including retirement income of $4,693; $1,340 monthly for veteran's disability; and an additional monthly payment of $3,131 as compensation for exposure to Agent Orange. He argued that Gloria was not entitled to income received from his retirement, and the Agent Orange compensation was for personal injury to him and his exposure predated his marriage to Gloria.

On November 12, 2013, the trial court ordered Phillip to pay spousal support in the amount of $2,000 a month to Gloria. The court based its award on the following findings: ". . . based upon your middle class standard of living, based upon an income together of about $7,000, based upon the fact that you are both retired, based upon the fact that she needs support, and you [Phillip] certainly are capable of paying support. . . . [¶] There's no hardship on you. Both of you were of retirement age." The order was

4

entered on December 4, 2013. On December 9, 2013, the trial court denied Phillip's ex parte application to vacate the order for spousal support.

## III

## JURISDICTION

As a preliminary issue, we first determine whether the trial court had jurisdiction to make an award of spousal support. Phillip argues the parties agreed in writing to waive jurisdiction if either of them remarried or died. Specifically, the parties agreed to the following order: "The court reserves jurisdiction over spousal support for the benefit of: both parties until the remarriage or death of either party." We conclude there is a patent ambiguity in this language as to whether it means a supporting party can avoid jurisdiction by remarrying as Phillip has done.

Phillip relies on section 4337, which provides: "Except as otherwise agreed by the parties in writing, the obligation of a party *under an order for the support of the other party* terminates upon the death of either party or the remarriage of the other party. [Emphasis added.]" Section 4337 says nothing expressly about the court's jurisdiction to award spousal support. Furthermore, section 4337 applies in circumstances where one party is subject to an existing order of support and the other supported party remarries. Section 4337 does not apply in this situation where Phillip was not under an order of support to Gloria, and it was Phillip, not Gloria, who remarried.

Instead, the correct statute to apply is section 4336, which involves the retention of jurisdiction in a long marriage:

5

"(a) Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration.

"(b) For the purpose of retaining jurisdiction, there is a presumption affecting the burden of producing evidence that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration."

Here the issue is whether the parties' written agreement can be interpreted to terminate jurisdiction to award spousal support to Gloria because Phillip remarried. We find the language of their agreement to be ambiguous and subject to interpretation, thus preserving the trial court's jurisdiction to award spousal support.

Where spousal support was an issue in the dissolution proceeding because a party requested it in her petition but no spousal support was originally awarded, the issue of jurisdiction to make a postjudgment spousal support award is decided according to the terms of the judgment. (*In re Marriage of Ostrander* (1997) 53 Cal.App.4th 63, 65-66.) "If ambiguous, the language in a marital settlement agreement should be construed in favor of support. (*In re Marriage of Ousterman* (1996) 46 Cal.App.4th 1090, 1096.)" (*In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 400; *In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 469.) "A term of the agreement is ambiguous if it is susceptible of more than one reasonable interpretation. [Citations.] Provided it supports a meaning to which the language is reasonably susceptible, extrinsic evidence is admissible to prove

the parties' intent as to ambiguous terms in a marital settlement agreement." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439, citing *In re Marriage of Paul* (1985) 173 Cal.App.3d 913, 917-918.)

A court's order retaining jurisdiction should be stated as explicitly as possible: "[W]e encourage trial courts to strive for this clarity." (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 467.) Unfortunately, clarity in this instance is lacking—perhaps because the parties were not represented by lawyers and Phillip prepared the stipulation and judgment, making it ambiguous whether the parties intended to terminate the obligation of a supporting party upon his remarriage, rather than the remarriage of the supported party. (See *Steele v. Langmuir* (1976) 65 Cal.App.3d 459, 463.) On its face, the language could be read to divest the court of jurisdiction to award spousal support to Gloria if either Phillip or Gloria remarried. That is the interpretation advanced by Phillip, who remarried in 1997, almost immediately after the divorce from Gloria was final. However, we reject this interpretation for two reasons.

First, Phillip never asked for spousal support in his petition. Instead, he asked for the court's jurisdiction over spousal support to terminate, and Gloria asked for support to be awarded. Based on the record, the judgment is certainly subject to the interpretation that only spousal support for Gloria was at issue, and the parties meant to agree that, if she remarried, jurisdiction to award support would end. We reach this conclusion in spite of *In re Marriage of Liss* (1992) 10 Cal.App.4th 1426, 1429-1430, in which the appellate court held the trial court did not abuse its discretion by retaining jurisdiction to award

7

spousal support to a husband despite his lack of request.  *Liss* supports the policy of retaining jurisdiction over spousal support in a long marriage.  In this case, we consider Phillip's initial request to terminate jurisdiction as an indication that the ultimate judgment concerned whether jurisdiction regarding payment of spousal support to Gloria would end if she remarried.

Second, an award of spousal support necessarily contemplates there be a supporting party and a supported party.  Section 4336, for example, refers to the obligation of a supporting party ending upon "the death of either party" and "the remarriage of the other party."  In other words, Phillips's obligations to Gloria under a spousal support award would end upon the death of either of them or the remarriage of Gloria.  But Phillip cites no authority allowing him, as the supporting party, to circumvent his obligation to provide support to Gloria by remarrying.  If that were allowed, it would render a spousal support award illusory because it could be easily avoided by the expedient of remarriage as Phillip has attempted.  Therefore, we conclude the evidence in the record supports that the trial court retained jurisdiction in this case to make a spousal support award in favor of Gloria.

IV

SUPPORT ORDER

Having determined there was jurisdiction, we next review the trial court's order for spousal support for an abuse of discretion.  (*In re Marriage of Kochan* (2011) 193 Cal.App.4th 420, 428; *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 76-77.)

8

Phillips argues the trial court must recognize and apply each applicable statutory factor in setting spousal support, and failure to do so is reversible error.  (§ 4320; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 303.)  However, our review of the record concludes the trial court engaged in sufficient analysis and application of the statutory factors.

The court considered the parties' respective earning capacities and the standard of living established during the marriage.  It took note that the parties each earned about $3,500 monthly, for a joint income of $7,000, establishing a middle-class marital standard of living.  The court also considered that Gloria had retired due to age and poor health.  (§ 4320, subds. (a), (h).)  The court expressly articulated Phillip's ability to pay spousal support, taking into account his $9,000 monthly income (a third of which is nontaxable), his standard of living, the needs of each party, their obligations and assets, the duration of the marriage, and the balance of hardships.  (§ 4320, subds. (c)-(f), (j), and (k).)  The other factors are not relevant or applicable.  Phillip has not articulated any reason why additional matters should be considered or would change the outcome.  Considering all the relevant circumstances, the trial court did not exceed the bounds of reason, and it cannot  "fairly be said" that no judge would reasonably make the same order under the same circumstances.  (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480; *In re Marriage of Lim and Carrasco* (2013) 214 Cal.App.4th 768, 773.)

9

V

DISPOSITION

The trial court retained jurisdiction to order spousal support, and properly based its spousal support award on the relevant circumstances.  (§§ 4320, 4336.)  We affirm the judgment.  Gloria, the prevailing party, shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

HOLLENHORST

J.